## UNITED STATES v. HARMON.

### No. 8147.

Circuit Court of Appeals, Sixth Circuit.
March 15, 1940.

Thomas E. Walsh, of Washington, D. C. (J. B. Frazier, Jr., U. S. Atty., of Knoxville, Tenn., and Julius C. Martin, Wilbur C. Pickett, and Thomas E. Walsh, all of Washington, D. C.; on the brief), for appellant.

S. J. Milligan, of Greeneville, Tenn., and Frank P. Bowen, of Knoxville, Tenn. (Frank P. Bowen, of Knoxville, Tenn., and Milligan & Haynes, of Greeneville, Tenn., on the brief), for appellee.

Before HICKS, ALLEN, and ARANT, Circuit Judges.

HICKS, Circuit Judge.

Suit upon a war risk insurance policy. The court overruled appellant's motion for a directed verdict and appellee had verdict and judgment. The policy was issued shortly after he entered military service on June 5, 1917. He was discharged on April 17, 1919; the policy lapsed January 19, 1921. The disease relied upon to mature the contract was pulmonary tuberculosis. There is evidence that appellee became afflicted therewith during the life of the policy. Dr. Howell examined him about September 10, 1920, and found that he then had active tuberculosis.

After his discharge appellee worked on a farm from May 19, 1919, to October 19, 1919, at a monthly wage of $60. From November, 1919, to December, 1919, he was employed by the Sanford-Day Iron Works at furnace work at a monthly wage of $64. From December, 1919, to February, 1920,

he was a fireman on a railroad. He was learning the work and was not compensated. In March and April, 1920, he fired boilers at Lynch, Ky., at $3 per day. From April, 1920, to October, 1920, he worked as a common laborer on a railroad section gang at $3 per day.

He testified that his inability to continue long upon any one job was due to the condition of his health but this fact carries no inference that he had become permanently diseased from tuberculosis' before the lapse of the policy.

In United States v. Gwin, 6 Cir., 68 F.2d 124, 126, we said: "There are, of course, a great number of maladies which are or may be steadily progressive, but which are not wholly incapacitating in their early stages. There are others which, though properly to be considered as total disabilities in the incipient stages, are often arrested to the extent that the patient may thereafter lead an industrious and a useful life. Pulmonary tuberculosis is one of the commonest of the latter class."

See, also, United States v. Sumner, 6 Cir., 69 F.2d 770, and United States v. Middleton, 6 Cir., 81 F.2d 205.

Some time after his examination by Dr. Howell appellee was examined by a board of Government physicians and was sent to a Government hospital at Johnson City, Tenn., where he remained until some time in 1923. He then became an inmate of a contract hospital at Knoxville, Tenn., where he remained for about a month; was then sent to a Government tubercular hospital at Oteen, N. C., where he remained about a month and from there to a Government hospital at Lake City, Fla., where he remained about a month and a half. In 1924 or 1925 he was examined by Dr. Oppenhimer and Dr. Lucas. Neither was a Government physician. Dr. Lucas is dead, but neither Dr. Howell nor Dr. Oppenhimer were called as witnesses. Appellee re-entered the Johnson City hospital and was given a furlough on March 10, 1934, and never returned. He brought his action on March 27, 1936.

There is evidence that appellee's disease was arrested as early as 1921. He was examined by Dr. Acuff and Dr. Kitts on March 25, 1921, and both lungs were found normal. The diagnosis was "fibrosis of lungs." He was examined by Dr. Abercrombie on September 7, 1921, and the diagnosis was "fibrosis of the lungs." This indicates that on both dates appellee's

disease was arrested or fairly arrested. The sputum was examined for tuberculosis by Dr. DePue on May 27, 1921, and no tuberculosis was found. Dr. DePue made another examination on August 19, 1921, with the same result. An examination by Dr. Daniel on August 16, 1922, indicated some reactivation in the right lung. Appellee was examined by Dr. Pillsbury on September 5, 1922, and a summary of the examination was that there was no definite clinical evidence of tuberculosis.

He was examined by Dr. Smartt on October 6, 1922, while at Oteen and the summary was "no evidence TBC." He was examined by Dr. Schroeder on September 25, 1923, while at the Johnson City hospital and the diagnosis was "Tbc. Pulm. Chr. apparently inactive." He was examined at the Johnson City hospital on November 13, 1923, by Doctors Townsend, Wallace and King and the diagnosis was "TBC. pul. chr. fluriotype app. arr. mod. adv. 2." He was examined at Knoxville, Tenn., on April 13, 1925, by Dr. Keeling. The diagnosis was "apparently mild, chronic, pulmonary tuberculosis, left upper arrested." He was examined at the sanitarium on January 16, 1936, by Dr. Mackey. This examination included an X-ray examination of the lungs. The diagnosis was "chronic, pulmonary, moderately advanced, cured." This means that appellee had carried an arrested case of tuberculosis for at least two consecutive years with no evidence of activity.

Finally, after the suit was brought, appellee was examined on August 25, 1937, by Dr. Purvis whom he introduced as a witness. This examination included an X-ray of the lungs which showed that his tuberculosis was "healed, arrested, or fairly arrested."

From the evidence taken in the aggregate we conclude that while, from some time within the life of the policy until the trial, appellant suffered probably more than one separate and distinct period of temporary disability from tuberculosis, yet these do not constitute total, permanent disability. See Lumbra v. United States, 290 U.S. 551, 560, 54 S.Ct. 272, 78 L.Ed. 492; United States v. Middleton, supra. We find no substantial evidence tending to show that appellant's disease had progressed to the extent of total, permanent disability within the life of the contract. We find no occasion to redefine the phrase "total permanent disability." See United States v. Sumner, supra.

We think the motion for a directed verdict should have been sustained. The judgment is therefore reversed and the case remanded for a new trial.